Complaint of

Debra L. Smith
v.
Francis J. Harvey, Secretary of the Army


Exhibit Index


A – Correspondence from Lieutenant General Stultz, Chief of Army Reserves and an administrative lawyer in the Army's The Judge Advocate General (TJAG) office

B – The Human Resource Command – St. Louis (HRC-SL) notice to me that I have a separation board on 12 July 2006.

C – Two Inspector General Documents indicating reprisal

D – Correspondence by the Army The Judge Advocate General's office

E – Correspondence by commanders and lawyers who have ignored my request for redress and due process. Commanders include Colonel Marsh, Major General Hernandez and Major General Castro.

F – The Article 138 (a.k.a Title 10, Section 938) complaint I made protesting the elimination board and requesting due process

G – My official record, which includes all evaluations and discharge paperwork I've ever received.

H – Army Times article on a West Point Army Reserve officer who had to sue the Army to get out of the Reserves after his statutory service was complete.

I - Excerpt from Congressional Research Service report

J – New elimination letter for Major Smith from Colonel Marsh, new HRC-SL Commander

K – Article about the abuses and biases against females in the military



July 21, 2006

**Officer who sued to resign is honorably discharged**

**By Michelle Tan**
*Staff writer*

The Army Reserve officer who sued the service so that he could resign his commission has been honorably discharged.

Capt. Brad Schwan, who accused the Army of being in breach of contract and forcing him into "involuntary servitude," had filed his lawsuit in federal court in California. He was waiting for a hearing before the federal judge to argue against a motion filed by the government to have his case dismissed.

Maj. Hillary Luton, an Army Reserve spokeswoman, confirmed on Friday that Schwan's resignation request had been approved.

Schwan, a military intelligence officer and 1997 West Point graduate, completed his eight-year service obligation in May 2005. He filed the lawsuit after the Army twice denied his application to resign. Schwan's initial request to resign was rejected based on a policy first detailed in a December 2004 memo from Maj. Gen. James R. Helmly, the former Army Reserve chief.

The policy states unqualified resignations submitted by officers who have completed their service obligations will be approved only if they meet one or more of the following criteria:

• The officer is assigned to a specialty that is at or above 80 percent personnel strength.

• The officer previously completed a deployment in support of operations Iraqi Freedom, Enduring Freedom or Noble Eagle.

• The officer provides convincing evidence of compelling personal reasons for separation. Documentation provided in such cases must include statements of counseling from Army medical or chaplain personnel.

The criteria don't apply to officers under stop-loss orders, according to the policy, which also says those officers can submit their requests after the stop-loss period has expired. Soldiers held under stop-loss are kept in service for prescribed periods beyond their contracted obligations.

Schwan's request to resign was rejected because "the personnel strength level for this officer's area of concentration and grade is below the readiness level needed to support ongoing contingency operations. In addition, Schwan has not provided compelling personal cogent reasons to justify approval," according to a copy of the letter rejecting his original request.

Helmly completed his term as Army Reserve chief in May. He was succeeded by Lt. Gen. Jack Stultz.

http://www.armytimes.com/print.php?f=1-292925-1970247.php                                    7/27/2006

Exhibit H

The resignation policy is believed to be under review, Luton said. No more information was available Friday afternoon.

Back to top

**MilitaryCity.com**
*Your gateway to the Military Times news and information websites*
ArmyTimes.   NavyTimes.   AirForceTimes.   MarineTimes.

Copyright © 2006
Use of this site signifies your agreement to the Terms of Service.

Exhibit H

# CRS Report for Congress
Received through the CRS Web

# Army Officer Shortages:
# Background and Issues for Congress

July 5, 2006

Charles A. Henning
Analyst in National Defense
Foreign Affairs, Defense, and Trade Division

Congressional Research Service ♦ The Library of Congress

Exhibit I

# Army Officer Shortages:
# Background and Issues for Congress

## Summary

The Army's enlisted recruiting shortfall in 2005 generated significant congressional and media interest, and served as the impetus for several legislative initiatives. However, until very recently, there has been little mention or visibility of potential shortages in the Army's officer corps. This problem is currently unique to the Army. While specific skill shortages and imbalances have been reported by the other services, only the Army is reflecting service-wide active component shortages.

The Army currently projects an officer shortage of nearly 3,000 in fiscal year (FY) 2007, with the most acute shortfalls in "senior" captains and majors with 11 to 17 years of experience. For example, the Army considers any personnel "fill rate" (the number of officers available to fill requirements) of less than 85% a "critical" shortage, and projects a fill rate of 82.6% for majors in FY2007.

The Army further projects an increased shortage of more than 3,700 officers the following year, and estimates that annual shortages in excess of 3,000 officers will persist through FY2013 unless accessions (the number of new lieutenants brought to active duty annually) can be increased and retention can be improved. It presently takes 10 years to "grow" a major (from lieutenant to promotion to major), and 14 years if that major is an academy or ROTC graduate. Therefore, the projected shortage appears to be a significant long-term challenge especially as the Army continues to transform and maintain a significant role in fighting the Global War on Terror (GWOT).

This report analyzes a number of potential factors contributing to the shortfall, especially the impact of reduced officer accessions during and after the Army personnel drawdown of the early 1990s, and the significant increase in Army officer requirements caused by the Army force structure transformation to a modular, brigade-centric force through its Modular Force Initiative. At this time, the high deployment tempo associated with Operation Enduring Freedom (OEF) and Operation Iraqi Freedom (OIF) does not appear to be associated with these shortfalls.

Although the Army has already introduced several new programs to enhance officer retention, other possible options exist that could help address the Army's officer shortages. They include the possibility of officer retention bonuses. The Army does not pay any officer continuation or retention bonuses, with the exception of Aviation Career Incentive Pay.

This report will be updated as necessary.

Exhibit I



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1 RESERVE WAY
ST. LOUIS, MO 63132-5200

*[handwritten: I received this on 3 July 2006 from Post Office. DLS]*

2 9 JUN 2006

AHRC-ZA-S

MEMORANDUM FOR MAJ Debra L. Smith, 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, P.O. Box 11655, Leawood, KS 66207

SUBJECT: AR 135-175, Officer Elimination Action

*[handwritten: No I wasn't as even this page 2 says in #6.]*

1. By memorandum dated 3 March 2006, you were notified that you are being considered for involuntary separation under the provisions of AR 135-175, paragraphs 2-12f, acts of personal misconduct and 2-12o, conduct unbecoming an officer. In accordance with paragraph 2-17g, you were required to respond to the Notification or a Board would proceed in your absence without according you the privileges listed in paragraph 2-19, except that counsel would be appointed to represent you in your absence. Despite the advice of your civilian counsel, you refused to respond. Therefore, you waived your rights as set forth in paragraph 2-19. By e-mail dated 1 June 2006, you indicated you may attend the Board despite the waiver of your rights. Although not required by law or regulation, the Notification dated 3 March 2006 is rescinded and you are hereby notified that you are being considered for involuntary separation under the provisions of AR 135-175, paragraphs 2-12f, acts of personal misconduct and 2-12o, conduct unbecoming an officer.

*[handwritten: No I did not.]*

*[handwritten: Irrelevant and reason for censure of my attorney for violating a confidence. My attorney denies that he said this.]*

   a. From October 2002 through April 2003, while assigned to the Foreign Military Studies Office at Fort Leavenworth, you demonstrated a pattern of misconduct characterized by disrespect, anger, and unprofessional behavior.

   b. From July 2004 through September 2004, you demonstrated a pattern of misconduct through disrespectful email messages and telephone calls to the Commander and staff at U.S. Army Human Resources Command-St. Louis (HRC-St. Louis).

   c. From March 2004 through February 2006 while assigned to U.S. Central Command (USCENTCOM), you demonstrated a pattern of misconduct. You failed to follow orders, and you threatened supervisors and superior officers at your place of duty. You received a General Officer Memorandum of Reprimand, dated 17 November 2005 from MG Brian Geehan for your "failure to follow lawful orders and demonstrated acts unbecoming an officer".

   d. Also, while you were assigned to USCENTCOM, you engaged in criminal misconduct. During a hearing into this criminal matter in a civilian court, you wore a U.S. Army uniform, thereby bringing discredit upon the Armed Forces in violation of Army Regulations.

Exhibit J

AHRC-ZA-S
SUBJECT: AR 135-175, Officer Elimination Action

    e. On 23 August 2005, you committed a security violation by attaching an e-mail classified "SECRET" to an "unclassified" Memorandum For Record submitted in response to a 22 August 2005 counseling statement from COL Douglas Boone for "unprofessional comments" you made to COL Boone, your "lack of loyalty", and making an "inappropriate statement" that he considered "threatening and unprofessional".

    f. From November 2005 through January 2006 while assigned to USCENTCOM, you demonstrated a pattern of misconduct when you gained or attempted to gain unauthorized access to classified materials. You received a General Officer Letter of Admonishment from MG Brian Geehan, dated 8 February 2006, for your use of "lies, deceit, and duplicity in order to get access to classified information and material".

    g. You acted in a manner unbecoming an officer in that you have on numerous occasions made unprofessional communications via e-mail. You have made implied and express threats as well as insubordinate comments.

2. You may elect to:

    a. Submit your resignation in lieu of elimination (Sec IV, Chap 6, AR 135-175) (Encls 1 and 2).

    b. Have your case acted upon by a board of officers.

    c. Request transfer to the Retired Reserve, if eligible.

3. If you elect to resign your commission in lieu of elimination after board proceedings have begun, you must consult with a Judge Advocate who will witness your resignation statement in writing.

4. If you elect to transfer to the Retired Reserve, you must consult with a Judge Advocate who will witness your request for retirement in writing.

5. If you elect to have your case acted upon by a board of officers, you will have the right to be represented by appointed counsel. MAJ David Black has been appointed to represent you. He may be contacted at david.f.black@us.army.mil or (202) 245-6820.

6. Acknowledge receipt of this notification by completing and returning enclosures 1 and 2 within 30 days of receipt of this correspondence. Failure to respond within 30 calendar days from the date of receipt may result in a board of inquiry proceeding in your absence without according you the privileges listed in paragraph 2-19, AR 135-175.

[handwritten annotation: "violates 6th amendment"]

2

AHRC-ZA-S
SUBJECT: AR 135-175, Officer Elimination Action

7. The following individuals are expected to be called as witnesses in the matter:

Mr. Karl Prinslow — in 2002 He swore at me, Fondled me, reprised against me, wrote a maliciously bad eval about me.
Foreign Military Studies Office
Fort Leavenworth, KS — BCMR as well as IGs are currently looking into his actions.

Ms. Carmelitta Campbell — in 2004 The worker who failed to get my file to me IAW law (took 1 year) & then misled on a statement. Major General Anderson struck down the admonishment I received from COL Cook because of this woman. Major General Anderson told her to destroy admonishment.
HRC – St. Louis
1 Reserve Way
St. Louis, MO 63132

I have no idea who this is. Mr. Stephen Brewer ?
HRC – St. Louis
1 Reserve Way
St. Louis, MO 63132

LTC Karla Jessup 2005 → She assaulted me & then lied to cover up. This is being looked at by Army and Marines.
marine U.S. Marine Corps
Parris Island, SC 29902

marine LTC Thomas Goessman 2005 → He thrust his hand in my face 6-8 times 3-4 inches away. I had to get out of the office before he left me alone.
2280 State Pond Rd.
Jonesboro, IL 62952

COL Samuel Hernandez → retired and wrote a good eval on me
522 Glenwood Dr.
Thomasville, GA 31792

Mr. Greg Harris 2005 → neighbor man who was a borderline stalker, who lied to the police twice, and who assaulted me.
528 Tropical Breeze Way
Tampa, FL 33602

COL Diann Terry 2002 → investigated Karl Prinslow's fondling of me } His frivolous charges against me were dismissed
National Guard Bureau
1411 Jefferson Davis Hwy
Arlington, VA 22202

Ms. Shauna Hale 2005 → State Attorney at Hillsborough County Florida. Give me a break.
800 E. Kennedy Blvd.
Tampa, FL 33602

I think that if HRC-SL really even calls these persons, not many would show. Or they would show out of vendetta.

Is she going to "try" the case the judge dismissed, again? What about my record as 10USC14903 requires?

3

AHRC-ZA-S
SUBJECT: AR 135-175, Officer Elimination Action

COL Douglas Boone  2005
CENTCOM, J3
MacDill AFB
Tampa, FL 33621

→ I and another Air Force captain sat down with him because all, without exception, minority men & all females, were doing clerical work (go-fer)

8. In accordance with AR 135-175, paragraph 2-19b(1) a copy of the documents expected to be submitted to the Board are enclosed herein under index (Enclosure 3). Any request to examine relevant classified materials should be submitted to the Board Recorder, MAJ David Laws.

9. As a result of the above action, suspension of favorable personnel action has been initiated under the provisions of paragraph 1-12b, AR 600-8-2. If you wish to discuss your options with counsel for consultation or desire assistance or further information to discuss your options, please contact Mrs. Jean Tuttleton at (314) 592-0572.

which was not supposed to be our job.

ROBERT T. MARSH
COL, AG
Commanding

3 Encls
1-3. as

All white males, were doing the strategy & planning work. Because the environment only became much worse. I filed an informal EO complaint. Subsequently, I and the Air Force female officer (only female officers on Task Force) were kicked off by COL Boone.

CF:
MAJ David Black (w/encls)

4

2

ELECTION FORM

_____
(DATE)

SUBJECT: Election of Options

Commander
U.S. Army Human Resources Command
ATTN: AHRC-PAP-T
1 Reserve Way
St. Louis, MO 63132-5200

I, MAJ Debra L. Smith, 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, having been informed I am being considered for involuntary separation, elect one of the following:

[ ] a. I elect to tender my resignation as a Reserve commissioned officer of the Army, USAR, in lieu of elimination, under the provisions of Section IV, Chapter 6, AR 135-175.

[ ] b. I desire a hearing before a board of officers.

_____
(Signature)

_____
(Printed Name and Rank)

_____
(Branch)     (SSN)

RESIGNATION STATEMENT

AHRC-PAP-T

_____
(Date)

MEMORANDUM FOR Commander, U.S. Army Human Resources Command (AHRC-PAP-T), 1 Reserve Way, St. Louis, MO 63132-5200

SUBJECT: Resignation in Lieu of Involuntary Separation

1. I _____
     (Name)         (Rank)      (Branch)              (SSN)
having been informed that I am being considered for involuntary separation, do hereby voluntarily tender my resignation as a Reserve commissioned officer of the Army, USAR, under the provisions of Paragraph 2-12, AR 135-175.

2. I have been advised of the reasons for initiation of involuntary separation action, of my right to appear before a board of officers, to be represented by counsel, to submit a brief, and any other statements, to present witnesses in my behalf, and to have a reasonable time (at least 30 days) to prepare my case.

3. I hereby waive these rights with the understanding that if my resignation is accepted I may be separated under either honorable conditions or conditions other than honorable. I also understand that I may be furnished an Honorable or General Discharge Certificate, or Other than Honorable Conditions Discharge, as determined by Headquarters, Department of the Army.

_____
(Signature)

(July 31, 2006 edition Christian Science Monitor)
## Abuse of women GIs: Good men must check bad ones
**Claims of sexual abuse in the military by a US Army specialist show a need for progress.**

### By Erin Solaro

**SHELTON, WASH.** – In January 2006, US Army Specialist Suzanne Swift went absent without leave (AWOL) from her unit, the 54th MP Company, rather than return to Iraq.

She claimed to have suffered repeated sexual harassment and abuse, and blamed a chain of command whose members variously refused to stop it, participated in it, and accused her of bringing it on herself. She was arrested on June 11.

Now, an Army investigation is under way to determine the merits of her allegations and whether she should be punished for going AWOL. Meanwhile, she has been assigned to another unit and is largely restricted to Ft. Lewis, Washington.

Not surprisingly, Specialist Swift's case is attracting attention from the antiwar left. But this case is different. Unlike another Fort Lewis soldier, 1st Lt. Ehren Watada, who has refused to go to Iraq on the grounds that the war is illegal and immoral, Specialist Swift claims that her refusal to return to Iraq is based upon the harassment and assault she suffered on her first deployment.

Her lawyer, Larry Hildes, a member of the left-leaning National Lawyer's Guild Military Law Taskforce, is seeking an honorable discharge for Swift, along with full veterans' benefits for the posttraumatic stress disorder (PTSD) allegedly caused by the abuse.

At one level, this case is nonsense. Swift has no legal right to refuse service in Iraq or anywhere else because her fellow soldiers may have committed crimes against her. If her emotional state is such that she can no longer function as a soldier, she should be honorably discharged and receive appropriate treatment and compensation.

But at a deeper level, Swift's case suggests that it is time for the US Army - for all the services - to answer one question: Must American servicewomen continue to regard sexual harassment, assault, and rape as part of the price they must pay for serving their nation in uniform?

When conscription ended in 1973, the services began taking more women (currently 15 percent of the military). With their generally better test scores and behavior, they would make up for all the high-quality men who weren't joining (and are not joining now). But the services expected women to remain second-class support troops even while moving them ever closer to combat.

This profound hypocrisy left women vulnerable. Good men could not depend upon them in a fight, jerks felt free to disrespect and harass them, and predators felt free to prey upon them. All too often, the command structure seemed more concerned with keeping them in their place or getting them out than with either justice or military effectiveness.

This is changing. Since September 2001, more than 146,000 servicewomen have gone to war. Many air and naval combat specialties were opened to women in the 1980s and '90s, due to sustained assault by an antimilitary feminist movement. But now, as a matter of military necessity, women are serving with small infantry and special operations units from which they are still legally barred. Full equality under arms isn't quite there yet. But it's happening.

Exhibit K

Further, servicewomen now seem more likely to report sexual harassment and rape, while the military, having made a sustained and serious attempt to reduce sexual harassment, is now doing the same for sexual assault.

But the solution isn't merely strict enforcement of the laws against sexual harassment and assault. It's certainly not sensitivity training, because these criminals are sensitive to other people's pain: they like it. The solution is for the brothers - of all ranks - to inform the perpetrators and their collaborators and sympathizers: "If you do this to our sisters, you're not our brother." The brothers must insist that their chain of command back them when informal censure and shunning aren't enough. Every unit has its share of criminals and dirtbags. The issue is, who sets the tone? It's time for the good men to set the tone.

I have seen this happening in Iraq's Sunni Triangle, where men kept an informal guard over the only all-female shower at Camp Junction City. I saw it in Afghanistan, where an infantryman warned me that he and his buddies had heard a serial rapist was operating down at Bagram Air Field and they hoped to find him. And I saw it in America, where a National Guard colonel who had problems with male troops from another (badly led) unit intruding upon his female troops in their shower told those soldiers, "You are armed. Buttstroke these men, and I will back you."

American servicewomen do not need more rules and regulations. They do not need the support of a feminist movement that, since 2001, has ignored their valor. They need the respect they have earned from their brothers, and the mutual protection that soldiers owe one another.

• *Erin Solaro is the author of "Women in the Line of Fire: What You Should Know About Women in the Military," which will be published in August.*

Exhibit K