UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEBRA L. SMITH, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 06-1117 (RWR) |
| | ) | |
| SECRETARY OF THE ARMY | ) | |
| FRANCIS J. HARVEY | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS

Defendant hereby moves to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the

Federal Rules of Civil Procedure on the ground that this Court lacks subject matter jurisdiction,

and Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff has failed

to state a claim upon which relief can be granted.

In support of this motion, the Court is referred to the accompanying Memorandum of

Points and Authorities.  A proposed Order consistent with this motion is attached hereto.

Respectfully submitted,

_____/s_____
KENNETH L.  WAINSTEIN, D.C.  Bar #451058
United States Attorney

_____/s_____
RUDOLPH CONTRERAS D.C. Bar No.  434122
Assistant United States Attorney


_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W.,
Washington, D.C.  20530
(202) 353-9895

OF COUNSEL:
LIEUTENANT COLONEL JOSEPH C. FETTERMAN
MAJOR JERRETT W. DUNLAP
Office of The Judge Advocate General
Department of the Army
901 N. Stuart Street, Suite 400
Arlington, Virginia 22203

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEBRA L. SMITH, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 06-1117 (RWR) |
| | ) | |
| SECRETARY OF THE ARMY | ) | |
| FRANCIS J. HARVEY | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**Introduction**

Plaintiff is a United States Army Reserve Major being considered for discharge from the service for misconduct.  Plaintiff challenges a United States Army regulation that establishes the procedures for the involuntary separation of U.S. Army Reserve (USAR) commissioned officers. Her primary argument is that the challenged regulation violates the Fifth Amendment's due process clause by allowing the initiation of involuntary separation proceedings prior to the exhaustion of other, unrelated, administrative remedies.  Plaintiff also challenges several statutory provisions, questioning the sobriety of the Acts' authors.  Additionally, Plaintiff raises objections to her separation board based on the misreading of statutory and Constitutional provisions.

Plaintiff's 2nd amended complaint fails to a state a claim for which relief may be granted, as it challenges an agency decision before it is final and is therefore not reviewable under the APA.  Additionally, plaintiff must exhaust her available intra-service administrative remedies. Finally, this action involves a nonjusticiable military decision.

Plaintiff's claims must also be dismissed on their merits. The regulation deals with the involuntary separation of USAR commissioned officers, and thus was promulgated under the Secretary of the Army's statutory authority to establish such regulations. Similarly, the regulation provides substantial due process rights to service-members, thus meeting minimum due process requirements. For these reasons, this action should be dismissed with prejudice.

## Background

**1.     Regulatory Background**

Army Regulation ("Army Reg.") 135-175, Separation of Officers, February 28, 1987, prescribes the criteria and procedures governing the separation of Reserve Officers. Paragraph 2-12 authorizes involuntary separation of an officer due to moral or professional dereliction, unless successfully rebutted. The list of conditions that qualify as moral or professional dereliction include acts of personnel misconduct and conduct unbecoming an officer. Army Reg. 135-175, ¶¶ 2-12(f) & (o). The involuntary separation of a USAR officer may be accomplished only on the approved recommendation of a board of officers. A USAR officer may be recommended for involuntary separation by a proper agency at Headquarters, Department of the Army ("HQDA"), regardless of an officer's assignment, or a commander with respect to a member of that command. Army Reg. 135-175, ¶ 2-15.

Once involuntary separation has been recommended, the area commander will notify the officer concerned that they must show cause for retention. Army Reg. 135-175, ¶ 2-17. The area commander must advise the officer of the requirement to acknowledge receipt of the notification, indicating the officer's election of the following options. The officer may elect to submit a resignation in lieu of involuntary separation, or to appear before a board of officers. If the

2

officer elects appearance before a board of officers, the area commander will appoint a board of officers under the provisions of Army Reg. 135-175 and Army Reg. 15-6.  Army Reg. 135-175, ¶ 2-17(f)(3).

The board of officers is required to make findings on each separate allegation contained in the notification memorandum.  Army Reg. 135-175, ¶ 2-34(a).  The board is then required to make a recommendation as to whether the officer should be retained or separated from service.  Army Reg. 135-175, ¶ 2-34(b)(3).  The board's findings and recommendations are then sent forward to the area commander.  If the area commander finds that the board has failed to make a finding or recommendation as required by the regulation, he or she must return the case to the board for compliance with the regulation.  Army Reg. 135-175, ¶ 2-20(a).  Once the area commander has acted upon the board's recommendation, it is sent forward to the Commander, Human Resources Command for action on behalf of Headquarters, Department of the Army.  Id. 2-20.1.  The Commander, Human Resources Command, can approve the recommendations of the board and cause the officer to be separated, or can disapprove the board recommendations and close the case.  Id.

## 2.    Facts

Plaintiff is being considered for involuntary separation because of misconduct[1] and

---

[1]  Army Reg. 135-175 does not define the term "misconduct."  However, the active duty counterpart regulation, Army Reg. 600-8-24, contains the same list of conduct that qualifies for involuntary separation of active duty officers.  Army Reg. 600-8-24, ¶ 4-2.  The definition for "misconduct" in Army Reg. 600-8-24 is:

Misconduct, moral or professional dereliction.  (See para 4–2.) Conduct within the control of the officer concerned, which includes but is not limited to drug abuse, alcohol abuse, criminal conduct, and civil confinement and results in either of the following:  a. Tends to bring the officer or the Army into disrepute; or b.

3

conduct unbecoming an officer, pursuant to Army Reg. 135-175, paragraphs 2-12(f) and (o)

Amend. Compl., Ex. L. The Army placed a suspension of favorable personnel action ("flag") on

plaintiff's personnel file.[2] Plaintiff challenges the Army's regulations that allow involuntary

separation proceedings to begin prior to the exhaustion of administrative remedies, alleging that

such proceedings violate her rights to due process under the Fifth Amendment and the

Administrative Procedure Act (APA). See Amend. Compl., at 2, ¶ 2. Plaintiff has requested that

the Court grant her a jury trial, a stay of government action, to include lifting the "flag," and an

order that the Army stop the involuntary separation procedures to allow for the exhaustion of

administrative remedies prior to initiation.[3] Amend. Compl at 28-30, ¶¶ 1-2, 7. Plaintiff also

seeks an order that her classified documents and e-mail be preserved and that she be granted

access to those classified materials. Id. at 30, ¶ 8. Finally, plaintiff seeks $10,000 as "slight

reimbursement for damages" related to her alleged due process violations, as well as costs. Id. at

30, ¶ 9.

 On March 3, 2006, plaintiff was notified that she was being considered for involuntary

separation. Compl. Exhib. E, Encl. 6. Plaintiff failed to request a hearing before a board of

---

  Results in the loss or abandonment of or suspension from professional status
when lack of status adversely affects the member's ability to perform the duties;
or c. Includes but is not limited to drug abuse, alcohol abuse, criminal conduct,
and civil confinement.

Id. at § II, Terms.

 [2] A suspension of favorable actions (flag) prevents the plaintiff from receiving any favorable action such as promotion, transfer, and awards while the elimination action is pending.

 [3] Plaintiff also requests Declaratory Judgments regarding 10 U.S.C. §§ 836, 12681, 14903.

officers. In response to the notification memorandum, plaintiff ignored the three election options

authorized under Army Reg. 135-175, and instead created a fourth, personalized option, stating:

> d.  I desire that MG Hernandez orders [SIC] COL Cook to remove the bogus and
> retaliatory flag.  She is singling me out.  Is she trying to remove the 50-80% of reservists
> who don't even show for mobilization?  Also, she looks sort of big.  Being overweight
> and not being able to pass a PT test is reason for her flag and removal.

Compl. Exhib. E, Encl. 6.   Plaintiff was notified on May 24, 2006 that an administrative

separation board was scheduled to convene on July 12, 2006, giving plaintiff over six weeks

notice.  See Compl. Exhib. B.  On June 19, 2006, plaintiff made application for a Temporary

Restraining Order ("TRO").  She alleged that proceedings related to her involuntary separation,

prior to the exhaustion of other administrative remedies, would violate her rights to due process

under the Fifth Amendment and the APA.  See Compl. at 2, ¶ 2.  Plaintiff claimed irreparable

injury due to the previously scheduled July 12, 2006 board of officers and the destruction of her

classified email account with United States Central Command.  Id. at 2, 6.  Plaintiff also

requested the removal of the flag on personnel file.  Id. at 8.  Defendant agreed to maintain

plaintiff's classified email accounts until January 15, 2007.  Exhibit 1 to Defendant's Opposition

to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.  Defendant

also offered plaintiff another option to elect a hearing before a board of officers, thereby

suspending the July 12, 2006 involuntary separation board.  Exhibit 2 to Defendant's Opposition

to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.  On June 29,

2006, plaintiff was again given notice that she was being considered for involuntary separation

under Army Reg. 135-175, ¶ 2-12(f)&(o).  Amend. Compl. Exhib J.  On July 17, 2006, the Court

determined that plaintiff's motion for injunctive relief with respect to the e-mail account and the

separation board were moot.  The Court also found that plaintiff had failed to demonstrate a

5

likelihood of success on the merits or irreparable harm with respect to the flag being lifted from

her personnel file. Plaintiff's motion for a TRO and preliminary injunction was denied. Plaintiff

filed an amended complaint on August 1, 2006 and with Defendant's consent filed a 2nd

amended complaint on August 21, 2006.[4]

## ARGUMENT

Plaintiff's Second Amended Complaint should be dismissed for failure to state a claim.

Plaintiff relies on the APA, which allows for the review of agency decisions, but only once final

agency action has been taken. 5 U.S.C. §§ 701-706; Trudeau v. FTC, No. 05-5363 (D.C. Cir.

July 28, 2006) (APA is not a jurisdictional statute but creates a limited cause of action for party

aggrieved by a final agency action). Because final agency action has not been taken, plaintiff's

claims are not ripe. Additionally, relief cannot be granted to plaintiff under the APA as

administrative remedies are available that plaintiff has not exhausted, as required by the APA.

Furthermore, the military decisions challenged by plaintiff are nonjusticiable military personnel

decisions. Finally, plaintiff's due process challenge fails on the merits, as the regulation is based

on statutory authority and provides substantial due process rights.

## 1.    Plaintiff's Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)

The Court does not have jurisdiction to block the involuntary separation proceedings

initiated against plaintiff, because the Army has not reached a final decision. Accordingly,

---

[4] Plaintiff's 2nd amended complaint has not been posted to the Court's electronic docket as of the filing of this motion. If Plaintiff has failed to file the 2nd amended complaint or the Court denies leave to file, the Defendant respectfully requests the Court grant Defendant an enlargement of time to respond to the first amended complaint pursuant to Fed. R. Civ. P. 6(b)(2) and deem this motion to be timely filed.

plaintiff's claim is not ripe. Additionally, the APA does not waive sovereign immunity for

monetary damages.

**A.      The Court Lacks Jurisdiction as Plaintiff's Claims are Not Ripe**

The Court lacks jurisdiction because the actions complained of are not ripe for review.

The purpose of the ripeness doctrine, which imposes constitutional jurisdictional limits on this

Court, is to avoid premature adjudication of suits, and to protect executive agencies from judicial

interference until administrative decisions have become final and felt by the parties in a concrete

way. Abbott Laboratories v. Gardner, 387 U.S. 136 (1967). Although plaintiff has been notified

that an elimination action has been initiated against her and a board has been appointed, she has

not yet elected to appear before the board. If plaintiff elects to appear before the board, she will

have the right to be represented by counsel, challenge members, present evidence, access records,

question witnesses, and testify or remain silent. Army Reg. 135-175, ¶ 2-27(b). Plaintiff also has

not exercised any of her remaining rights accorded to her under Army regulations in the

administrative elimination process. For example, if recommended for discharge by the board,

she has yet to submit matters to the area authority and to HQDA before a final decision may be

made. Id. at ¶¶ 2-19, 2-20.

A case is generally ripe if any remaining questions are purely legal ones and, conversely,

not ripe if further factual development is required. Abbott Labs., 387 U.S. at 149. Furthermore, a

claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or

may not occur at all. Texas v. United States, 523 U.S. 296, 300 (1998). Plaintiff's separation

board will consider many of the facts that Plaintiff is alleging regarding witnesses against her.

Additionally, the separation board could vote to retain her in service, obviating the need for judicial review.

There has been no final decision to involuntarily separate plaintiff.[5]  Plaintiff seeks to enjoin an ongoing, uncompleted administrative proceeding -- precisely the type of issue the courts in this circuit have refused to decide.  Hastings v. Judicial Conf. of the United States, 770 F. 2d 1093 (D.C. Cir. 1985)(investigation of judge's conduct); Andrade v. Lauer, 729 F.2d 1475 (D.C. Cir. 1984)(Department of Justice Reduction in Force); North v. Walsh, 656 F. Supp. 414 (D.D.C. 1987)(investigation of independent counsel appointed under Ethics in Government Act).

**B.    The APA Does Not Grant A General Waiver of Sovereign Immunity.**

Plaintiff alleges that this court possesses jurisdiction based upon Federal Question, 28 U.S.C. §1331 and the APA.  Amend. Compl. at 8, ¶ 1.  It is well settled that "federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994).  A cause is presumed to lie outside the Court's jurisdiction, and the plaintiff bears the burden of proving the contrary. Kokkonen, 511 U.S. at 377.  Further, unless the protections of the doctrine of sovereign

---

[5]  The U.S. Supreme Court has recognized that the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality.

> The finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

Darby v. Cisneros, 509 U.S. 137 (1993) (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985)).

immunity have been waived by statute, the United States and its agencies are protected from suit. Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994) (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction")). Waivers of sovereign immunity cannot be implied, but must be unequivocally expressed. Lane v. Pena, 518 U.S. 187, 192 (1996). Such statutory waivers "are to be construed strictly in favor of the sovereign." McManon v. United States, 342 U.S. 25, 27 (1951) (footnote omitted).

As noted above, plaintiff relies on 28 U.S.C. § 1331 and the APA for jurisdiction. While 28 U.S.C. § 1331 does grant federal jurisdiction, is does not constitute a general waiver of sovereign immunity. Keith v. United States Railroad Retirement Board, 2006 U.S. Dist. LEXIS 50598, *15 (D.D.C. July 25, 2006) (citing American Airlines v. Austin, 778 F. Supp. 72, 74-75 (D.D.C. 1991). Conversely, while the APA is not an independent basis for jurisdiction, Califano v. Sanders, 430 U.S. 99 (1977), it does grant a limited waiver of sovereign immunity, but only for non-monetary claims. 5 U.S.C. § 702 (2005); Austin, 778 F. Supp. at 75. Plaintiff fails to specify the grounds for her monetary claim of $10,000, other than stating "as a slight reimbursement for damages (she has) already suffered for not being allowed due process." Amend. Compl. at 10. Even if the Court were to determine plaintiff's claims are ripe, the APA does not waive sovereign immunity for monetary claims. Accordingly, plaintiff's monetary claims should be dismissed.

The only potential waiver of sovereign immunity upon which plaintiff could rely is the APA. Under the APA, plaintiff can seek review of a final agency action, and that decision must be upheld unless it is determined to be "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law."  5 U.S.C. § 706(2)(A); <u>Office of Commun. of the Church of Christ</u> <u>v. Fed. Commun. Commission</u>, 327 F.3d 1222,1224 (D.C. Cir. 2003) .  Congress has provided that the APA applies to all actions of federal agencies unless explicitly prohibited by statute.  5 U.S.C. § 701(b)(2).

  Plaintiff's request for a jury trial is also unfounded, as the APA does not include the right to a jury trial.  The Supreme Court held in <u>Lehman v. Nakshian</u>, a case arising under the Age Discrimination in Employment Act, that "if Congress waives the Government's immunity from suit, ... the plaintiff has a right to a trial by jury only where that right is one of 'the terms of [the Government's] consent to be sued.'" 453 U.S. 156, 160 (1981) (superceded by statute on other grounds)(quoting <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976)); <u>see also</u> 453 U.S. at 162 n.9 ("Since there is no generally applicable jury trial right that attaches when the United States consents to suit, the accepted principles of sovereign immunity require that a jury trial right be clearly provided in the legislation creating the cause of action.").  As the APA contains no statutory consent to a jury trial, plaintiff's request must be denied.

**2.** <u>**Plaintiff's Suit Should be Dismissed under Fed. R. Civ. P. 12(b)(6) for Failure to**</u>  <u>**State a Claim upon which Relief Can be Granted**</u>

  To the extent that the Court has subject matter jurisdiction over plaintiff's claims, defendant respectfully requests the Court dismiss her complaint under Rule 12(b)(6) of the Fed. R. Civ. P. for failure to state a claim upon which relief can be granted.  The courts will only dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46,(1957); <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, while the Court accepts as true all of the factual

allegations set forth in the complaint, <u>Doe v. United States Dep't of Justice</u>, 753 F.2d 1092, 1102 (D.C. Cir. 1985), and construes the complaint liberally in favor of the plaintiff, <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979), it "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint." <u>Kowal</u>, 16 F.3d at 1276.

The APA provides that judicial review is available for "final agency action for which there is no other adequate remedy in a court," and that "preliminary, procedural, or intermediate agency action . . . is subject to review on the review of the final agency action."  5 U.S.C.  704 (2005).  The last sentence of §704 reads:

> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704 (2005).  The D.C. Circuit recently addressed the applicability of the APA to non-final agency actions.  Although finding that the APA's waiver of Sovereign immunity was not limited by the final agency action requirement, the Court held that a plaintiff cannot maintain a cause of action under the APA for a non-final agency action. <u>Trudeau v. FTC</u>, 2006 U.S. App. LEXIS 18940 (D.C. Cir. 2006).

This Circuit has consistently required servicemembers to exhaust their intra military remedies before attempting to adjudicate claims challenging an alleged wrongful

11

discharge under the APA.  See Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986)(an

aggrieved military officer must first exhaust his administrative remedies prior to litigating

his claims in a federal court.); Knehans v. Alexander, 566 F. 2d 312 (D.C. Cir. 1977);

Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C 2001) (where the damages suffered by

delay are  not irreparable (i.e., the delay can be compensated by awarding back pay,

seniority, etc.), courts have required pursuit of remedies within the military) citing Dowds

v. Bush, 792 F. Supp. 1289 (D.D.C. 1992) (holding that although exhaustion is not

required when the military refuses to separate, it is required when the military decides to

separate a servicemember).  Premature or unnecessary judicial intervention in such cases

implicates separation of powers concerns and may adversely affect morale and discipline.

Strict application of the exhaustion doctrine also maintains the balance between military

authorities and the federal courts and promotes judicial economy.  Schlesinger v.

Councilman, 420 U.S. 738, 756-57 (1975).

  Plaintiff has acknowledged that the APA requires the exhaustion of administrative

remedies.  Amend. Comp. at 2, ¶ 2.  Even if the agency decision to discharge plaintiff

was final and plaintiff's claim was ripe for review, the plaintiff would still be required to,

at a minimum, exhaust her administrative remedies regarding her separation board.  Bois,

801 F.2d at 468.  In addition to the rights granted to plaintiff at her separation board,

Army Regulation 135-175, ¶ 12.1 grants plaintiff the right to appeal first to the authority

that initiated the action and then "[i]f the original final authority was the area commander,

the appeal will be forwarded to Cdr, ARPERCEN. (2) If the original final authority was

the Cdr, ARPERCEN, the appeal will be forwarded to Chief, Army Reserve as

final authority." A. Reg 135-175.

Plaintiff argues that exhaustion would be futile. Amend. Compl. at 2-3, ¶ 2. Plaintiff fails to allege any facts that would prove it futile to pursue administrative remedies. On the contrary, plaintiff's contention the she should be allowed to pursue her administrative remedies prior to commencing a separation proceeding implies her belief that the administrative bodies will adjudicate her case fairly.[6] Given the availability of post-discharge review procedures, plaintiff cannot demonstrate that she has exhausted her administrative remedies.

Plaintiff's claims should be dismissed while she pursues the available administrative remedies, namely the separation proceedings and, if necessary, an appeal. In addition to the benefit of agency expertise, the military review process produces a record for judicial review, which is particularly beneficial in cases involving the proper construction and application of military regulations. Moreover, the military review process may accord plaintiff the relief she seeks, thereby obviating the need for judicial review. See Noyd v. Bond, 395 U.S. 683, 696 (1969); Schlesinger, 420 U.S. at 754-57.

3.    **The Decision of Plaintiff's Military Commanders to Initiate Involuntary Separation Proceedings Presents a Nonjusticiable Military Decision**

Distinct from the APA's exhaustion requirement, the D.C. Circuit Court has held

---

[6] Given the lengthy list of administrative remedies plaintiff is seeking, she may spend "years and even decades" exhausting her administrative remedies. Amend. Compl. at 6. This may be plaintiff's tactic to reach retirement prior to initiation of the involuntary separation proceedings. If the Court were to allow servicemembers to exhaust all administrative remedies prior to the commencement of any separation proceeding, the Army would effectively lose the ability to involuntarily separate a servicemember in a timely manner.

that military personnel decisions are nonjusticiable absent a decision from the appropriate

military records correction board.  Even if plaintiff had properly pled and proved subject

matter jurisdiction, it is clear that the type of military determinations involved here are

nonjusticiable.

　　　　Plaintiff cannot prevail on her challenge to the administrative separation board

initiated against her because as a Military personnel decision the separation proceeding is

a non-justiciable issue.  See Brannum v. Lake, 311 F.3d 1127 (D.C. Cir. 2002),

(dismissing under Feres[7] doctrine appellant's constitutional and statutory claims regarding

alleged procedural violations suffered in Article 15 Nonjudicial Punishment imposed in

lieu of court martial).  The D.C. Circuit recently reiterated that military personnel

decisions are not reviewable absent a decision of a Military Correction Board. In Piersal

v. Winter, 435 F.3d 319 (D.C.Cir., 2006), the Court stated:

> In Kreis we also acknowledged the "fundamental and highly salutary
> principle" that "[j]udges are not given the task of running the [military]."
> 866 F.2d at 1511 (quoting Orloff v. Willoughby, 345 U.S. 83, 93 (1953));
> see also Gilligan v. Morgan, 413 U.S. 1, 10 (1973). In light of that
> principle, we held nonjusticiable a serviceman's claim for retroactive
> promotion. We held justiciable, however, the serviceman's "more modest
> request" to review "the reasonableness" of the decision of a military board
> of correction pursuant to the standards of the APA. Kreis, 866 F.2d at
> 1511.

Id. at 322.  While Plaintiff indicates that she has applied to the ABCMR, she asks this

Court to intervene before that body issues its decision and review the military's decision

to separate her before that decision is even made, a review precluded by Brannum and

Piersal.

---

[7] Feres v. United States, 340 U.S. 135 (U.S. 1950).

Additionally, Plaintiff's application to the ABCMR is not regarding her removal. Rather plaintiff is seeking amendment of her military records. While these records may be introduced at the separation board, the ABCMR is not reviewing the separation proceedings as these proceedings have not occurred yet. Nothing in the ABCMR's governing statute, 10 U.S.C. § 1552 or Army Regulations would require delaying plaintiff's separation board while her application to the ABCMR is pending.

As a general rule, courts presume civil and military officials in the armed forces act properly and in accordance with the law. Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997); Bockoven v. United States, 727 F.2d 1558, 1563 (Fed. Cir. 1984). Although an elimination action has been initiated against the plaintiff, which may ultimately lead to the plaintiff's separation from the Army, it is not the role of the Court to second-guess the action of the commander in this regard. Commanders are given wide latitude and broad discretionary authority to determine the composition of the armed forces to ensure their readiness, competency, and quality. Gilligan v. Morgan, 413 U.S. 1 (1973).

Federal courts have been extremely reluctant to interfere with the military's exercise of discretion in internal military matters and have afforded great deference to military personnel decisions. Goldman v. Weinberger, 475 U.S. 503 (1986); The federal courts "are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." Chappell v. Wallace, 462 U.S. 296, 305 (1983). As the Supreme Court held in Rostker v. Goldberg:

> [I]t is difficult to conceive of an area of governmental activity in which the courts
> have less competence. The complex, subtle, and professional decisions as to the
> composition, training, equipping, and control of a military force are essentially
> professional military judgements, subject always to civilian control of the

15

Legislative and Executive Branches.

453 U.S. 57, 65 (1981). "[J]udges are not given the task of running the Army . . ..

[O]rderly government requires that the judiciary be as scrupulous not to interfere with

legitimate Army matters as the Army must be scrupulous not to intervene in judicial

matters."  Orloff v. Willoughby , 345 U.S. 83, 93-94 (1953).

Judicial intervention in this case poses more than a hypothetical threat to the

unique relationship that exists between the USAR leaders and their subordinates.  To

resolve plaintiff's  allegations, the Court would need to inquire into the appropriate

structure and timing of administrative separation proceedings.  It is precisely the intrusive

nature of any judicial review that destroys military discipline and the command

relationship.  As a result of such review, in the future officers in the USAR necessarily

would hesitate before making any decision, to consider the "litigation risks" of their

actions.  Such results would effectively cripple the effectiveness of the USAR, potentially

burdening them with poor performing officers still exhausting administrative remedies.

The Court would also be required to determine whether plaintiff should be given access

to classified materials; a decision which would directly relate to national security.

Because of these concerns, both the Supreme Court and this Circuit have ruled that suits

such as this are nonjusticiable.  Plaintiff's claims should be dismissed on this ground.

Plaintiff's claim that she should be given access to her classified email account is

also nonjusticiable.  See Department of Navy v. Egan, 484 U.S. 518 (1988)("control of

access to classified information is exclusively committed to the sole exercise of judgment

by the Executive Branch.");  Bennett v. Chertoff, 425 F.3d 999, 1002 (D.C. Cir.

16

2005)(noting that because the authority to issue a security clearance is a discretionary function of the Executive Branch and involves the complex area of foreign relations and national security, employment actions based on denial of security clearance are not subject to judicial review, including under Title VII). In Egan, the Supreme Court held that the Merit Systems Protection Board lacked authority to review a denial of a security clearance whereby a federal employee was automatically removed from his temporary position at a nuclear submarine base after his application for a required security clearance was denied. The Supreme Court stated that "the grant of security clearance to a particular employee [is] a sensitive and inherently discretionary judgment call [and] is committed by law to the appropriate agency of the Executive Branch." Egan, 484 U.S. at 526-27. The Supreme Court noted that, absent a controlling statute, the Executive has exclusive authority to "classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position . . . that will give that person access to such information" (emphasis added) and that such authority originates in the United States Constitution, Art. II, § 2. The Supreme Court observed, even more broadly, that "unless Congress specifically has provided otherwise, courts have traditionally been reluctant to intrude upon the authority of the Executive in military and national security affairs." Id. at 530. Because there is no statutory authority granting plaintiff access to classified information, plaintiff's request is nonjusticiable.

4.    **The Secretary of the Army has Authority to Involuntarily Discharge USAR Officers**

Section 12681, 10 U.S.C., provides that "reserve commissioned officers may be discharged at the pleasure of the President." In her Amended Complaint, plaintiff argues

that defendant has violated 10 U.S.C. § 12681, claiming "only the President, and not the

Secretary of the Army or the Secretary of Defense, may discharge officers."  Amend.

Compl., at 11, ¶ 1.   Plaintiff's argument is misplaced, as the actions of the Secretary of

the Army, as head of the pertinent executive agency, qualify as the acts of the President.

Wilbur v. United States ex. rel. Barton, 46 F.2d 217, 220 (D.C. Cir. 1930) (applying

Wilcox v. Jackson, 38 U.S. 498 (1839)); Law v. United States, 26 Cl. Ct 382, 389 (1992)

aff'd, 11 F.3d 1061 (Fed. Cir. 1993).  In 1839, in Wilcox v. Jackson,, the Supreme Court

considered the authority of the heads of executive departments to act on behalf of the

President.  In examining a statute that for the reservation of land for military purposes "by

order of President," the Court assessed the sufficiency of a reservation that had been

made by the Secretary of the War.  In finding the reservation sufficient, the Court

explained:

> The immediate agent in requiring this reservation was the secretary of war, yet we
> feel justified in presuming that it was done by the approbation and direction of the
> President. The President speaks and acts through the heads of the several
> departments in relation to subjects which appertain to their respective duties. . . .
> Military posts . . . belong to the war department. Hence, we consider the act of the
> war department in requiring this reservation to be made, as being in legal
> contemplation the act of the President; and, consequently, that the reservation thus
> made was in legal effect, a reservation made by order of the President, within the
> terms of the act of congress.

Id. at 513.

Wilcox has been adopted by a long line of subsequent cases allowing executive

agency Secretaries to serve as the President's alter ego and make determinations assigned

by statute to the President that directly relate to the agency's work. See, e.g., United States

v. Farden, 99 U.S. 10, 19 (1879) (Secretary of Treasury's suspension of a revenue

collector); <u>United States v. Fletcher</u>, 148 U.S. 84, 90-91 (1893) (Secretary of War's dismissal from service of an Army officer); <u>Bendix Aviation Corp., Bendix Radio Div. v. Federal Communications Com.</u>, 272 F.2d 533 (D.C. Cir. 1959) (the Director of the Office of Defense Mobilization's removal of frequency bands from public license); <u>Brownfield v. United States</u>, 148 Ct. Cl. 411, 416-17 (1960) (termination of a temporary appointment to a higher Air Force rank); <u>Seltzer v. United States</u>, 98 Ct. Cl. 554, 561 (1943) (discharge of an Army officer from active duty). Here, the Secretary of the Army may act as the alter ego of the President under § 12681 because the specific decision to initiate involuntary separation proceedings of a USAR officer relates to a subject which relates to the Secretary of Army's duties. <u>Wilcox</u>, 38 U.S. at 513.[8] Accordingly, the Secretary of the Army has established board procedures for the involuntary separation of USAR officers under Army Reg. 135-175.

In the alternative, plaintiff argues that 10 U.S.C. §§ 14902-03 is the governing statutory authority. Amend. Compl. at 11, ¶ 1. Plaintiff is mistaken. Section 14902 establishes authority and procedures for the separation of reserve officers from active duty. The procedure is often called a "Show Cause" board because the officer must "show cause for retention in an active status." 10 U.S.C. § 14902. Section 14903 establishes authority for the "Show Cause" board of inquiry. Army Reg. 600-8-24 governs "Show Cause" proceedings for active duty commissioned officers. These

_____

[8] Although Congress has granted the President the specific authority to delegate responsibilities to other officials pursuant to 3 U.S.C. § 301, the President's failure to issue an Executive Order specifically authorizing the Secretary of the Army to involuntarily separate USAR officers does not warrant the conclusion that the President precluded the Secretary from invoking such authority. <u>Law v. United States</u>, 26 Cl. Ct 382, 389 (1992).

statutory and regulatory provisions are not applicable to plaintiff's case, because she is in the inactive ready reserve, not on active duty.  Amend. Compl, at 30.  Accordingly, plaintiff's arguments that defendant has violated these sections are misplaced.  Amend. Compl. at 11-13, 14, ¶¶ 1, 3.

Plaintiff also argues that 10 U.S.C. §§ 10141, 10144, 10151, 10152, and 10153 prohibit her from being transferred from the Inactive Ready Reserve to another inactive status.  Amend. Compl., at 15.  However, the Army is initiating proceedings to remove her from any status in the Army, not simply trying to transfer her from active duty. Amend. Compl., Ex. L.

Throughout her Second Amended Complaint, plaintiff argues that the administrative measures contemplated by the Army are "punishment."  This lies at the heart of her arguments regarding the Sixth Amendment (right to be present and speedy trial), the Fifth Amendment ("flag" is punishment) and Article 36 of the Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. § 836.  Amend. Compl. at 13, ¶ 2; id. at 19, ¶ 3; id. at 25, ¶ 1.  Plaintiff's argument misses the distinction between criminal prosecution under the Sixth Amendment and the U.C.M.J. and the administrative action contemplated by the Army.

The authority of commanders to dispose of offenses under the U.C.M.J. is described in Rule 306 of the Rules for Courts-Martial (R.C.M.).  R.C.M. 306(a) (2005). Rule 306 further provides that "[a] commander may take or initiate administrative action, in addition to or instead of other action taken under this rule, subject to the regulations of the Secretary concerned."  The discussion of Rule 306 (d) states that administrative

20

measures include "security classification changes . . . and administrative separations."

R.C.M. 306(d) (discussion). Accordingly, plaintiff's argument that the "board of inquiry"

under Army Reg. 135-175 "gains its legitimacy" from the "courts of inquiry" referenced

in Article 36 is without merit. The difference between Article 36 courts of inquiry and

the involuntary separation boards of inquiry under 10 U.S.C. § 12681 is that Article 36

courts of inquiry deal with criminal prosecution, whereas the boards of inquiry deal with

administrative separation of reserve officers. 10 U.S.C. § 836. Similarly, the Sixth

Amendment deals with "criminal prosecutions." U.S. Const. Amend. VI. Thus,

Plaintiff's Sixth Amendment arguments are also without merit. Finally, plaintiff's

argument that a "flag" is punishment fails, as it is clearly an administrative measure, not

"punishment." R.C.M. 306(d)(stating administrative measures include administrative

withholding of privileges).

**5.    Army Regulation 135-175 Satisfies Fifth Amendment Due Process Requirements**

Plaintiff's claims also fail on the merits. As previously noted, plaintiff argues that

the Army should not be allowed to initiate involuntary separation proceedings until

servicemembers are allowed to exhaust all administrative proceedings. Plaintiff avers

that to do so violates servicemembers' Fifth Amendment rights. Citing Wikipedia as

legal authority, plaintiff argues that strict scrutiny standards should be applied to her

claims. Amend. Compl. at 17, ¶ 1(a). She states there is "no compelling interest in

removing a well performing officer." Id. Of course, that is not the Army's intention.

The Army seeks to discharge officers due to moral or professional dereliction, such as

conduct unbecoming an officer or acts of personal misconduct, as determined by a board

21

of inquiry.  Army Reg. 135-175, ¶ 2-12(f)&(o). Plaintiff has alleged no basis for requiring

strict scrutiny review, as plaintiff has not alleged the violation of a fundamental right.

The procedures in Army Reg. 135-175 clearly satisfy the dictates of procedural

due process.  See Johnson v. Quander, 370 F. Supp. 2d. 79, 91 (D.D.C 2005) aff'd 440

F.3d 489 (D.C. Cir. 2006) ( "The fundamental requirement of [procedural] due process is

the opportunity to be heard at a meaningful time and in a meaningful manner.") (quoting

Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). "Procedural due process rules are meant

to protect persons not from the deprivation, but from the mistaken or unjustified

deprivation of life, liberty, or property."  Id. (quoting Carey v. Piphus, 435 U.S. 247, 259

(1978)). "Due process is flexible and calls for such procedural protections as the

particular situation demands." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481

(1972)).  In resolving claims that an individual's procedural due process rights have been

violated, three factors are considered:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's interest, including
> the function involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335 (quoted in Johnson, 370 F. Sup. 2d at 91.).

Based on the Mathews analysis, Army Reg. 135-175 does not violate due process

requirements.  Mathews, 424 U.S. at 335.  First, it is settled that, absent some right

created by statute or regulation, military officers have no constitutionally protected

property rights in continued military service.  Wilhelm v. Caldera, 90 F. Supp. 2d 3, 16

(D.D.C 2000) aff'd 6 Fed. App'x. 3 (D.C. Cir. 2001) (citing Guerra v. Scruggs, 942 F.2d

22

270 (4th Cir. 1991); Navas v. Vales, 752 F.2d 765 (1st Cir. 1985); Rich v. Secretary of

the Army, 735 F.2d 1220 (10th Cir. 1984); Woodard v. Marsh, 658 F.2d 989 (5th Cir.

1981); Ampleman v. Schlesinger, 534 F.2d 825 (8th Cir. 1976)).  As plaintiff has

demonstrated no right, created by statute or regulation, to remain in the USAR, she has

suffered no injury to a private interest.  Absent a property or liberty interest, plaintiff has

no right to any specific process.  Second, plaintiff fails to recognize the substantial due

process rights that are afforded to officers under Army Reg. 135-175.  As noted above, if

plaintiff chooses to participate in the involuntary separation board, she will have the right

to: appear before the board, be represented by counsel, challenge members, present

evidence, access records, question witnesses, and testify or remain silent. Army Reg.

135-175, ¶ 2-27(b).  She has further due process rights following the board, to include

application to the approval authority and a superior commander, as well as access to the

ABCMR and ADRB.  As the ABCMR and ADRB are designed to remedy an injustice,

the risks of injury from an erroneous decision are nil.  See Mathews, 424 U.S. at 335.

Plaintiff has failed to establish that additional safeguards are merited and that the value of

additional safeguards outweigh the additional fiscal and administrative burdens they

would impose on the Army.

        Finally, the Government's interests in allowing the involuntary separation

procedures to proceed without first allowing plaintiff to exhaust all conceivable

administrative remedies are substantial.  Mathews, 424 U.S. at 335.  Plaintiff's request is

contrary to the purpose of the regulation, which provides: "Any officer who has been

given a fair chance and has failed to become an effective officer will be considered for

23

involuntary separation to ensure that his ineffectiveness is not permitted to continue to affect the Army adversely." Army Reg. 135-175, ¶ 2-15(a). Prompt action is a stated goal of involuntary separations. Id. at ¶ 2-21 ("Except for any delays that may be necessary to protect the rights of respondents, involuntary separation cases will be given prompt attention and handled as expeditiously as possible."). This establishes a clear government interest that is inconsistent with plaintiff's request. Accordingly, plaintiff's challenge to the regulation fails under Mathews.

## CONCLUSION

Plaintiff's challenge to Army Reg. 135-175 under the APA is not ripe and therefore lacks subject matter jurisdiction, as it challenges an agency decision before it is final. Additionally, plaintiff is required to exhaust the available intraservice administrative remedies prior to coming to the federal courts, not prior to the initiation of the involuntary separation proceedings, as she argues. Finally, this action involves a nonjusticiable military decision.

Plaintiff's claims also fail on their merits. The Secretary of the Army has express statutory authority to establish regulations regarding the involuntary separation of USAR commissioned officers. Army Reg. 135-175 provides substantial due process rights to servicemembers, and meets minimum due process requirements. For these reasons, this action should be dismissed with prejudice.

24

Respectfully submitted,


_____/s_____
KENNETH L.  WAINSTEIN,
D.C.  Bar #451058
United States Attorney




_____/s_____
RUDOLPH CONTRERAS
D.C. Bar No.  434122
Assistant United States Attorney




_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W.,
Washington, D.C.  20530
(202) 353-9895

OF COUNSEL:
LIEUTENANT COLONEL JOSEPH C. FETTERMAN
MAJOR JERRETT W. DUNLAP
Office of The Judge Advocate General
Department of the Army
901 N. Stuart Street, Suite 400
Arlington, Virginia 22203

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Dismiss was served on

Plaintiff by electronic mail and by First-Class mail; postage prepaid to:

Debra L. Smith
P.O. Box #11655
Overland Park, KS 66207,

on this 31st day of August, 2006.


            _____/s/_____
            KEVIN K. ROBITAILLE
            Special Assistant U.S. Attorney
            Civil Division
            555 Fourth St., N.W.
            Washington, D.C.  20530
            202-353-9895  / FAX 202-514-8780