UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEBRA L. SMITH,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1117 (RWR) |
| | ) |
| **FRANCIS J. HARVEY,** | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Pro se plaintiff Debra L. Smith brought this suit against the Secretary of the United States Army, alleging deprivations of her property and liberty interests in violation of her due process rights under the Fifth Amendment, violations of her Sixth Amendment rights, and violations of the Administrative Procedure Act ("APA") in relation to the involuntary separation proceedings that have been initiated against her. The Secretary moved to dismiss Smith's APA and constitutional claims for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Because Smith's APA claim is not ripe for judicial review, that claim will be dismissed. In addition, because Smith has not sufficiently alleged a deprivation of any constitutionally-protected liberty or property right under the Fifth Amendment, and because she is not being subjected to a criminal prosecution so as to render the Sixth Amendment applicable in this case, she has failed to state any

-2-

constitutional claim upon which relief can be granted, and
Smith's constitutional claims will also be dismissed.

BACKGROUND

Smith is a major in the United States Army Reserves
("USAR").  (See Pl.'s 2d Am. Compl. ("2d Am. Compl.") at 2.)  She
is facing involuntary separation from the USAR under Army
Regulation 135-175[1] because of alleged misconduct and conduct
unbecoming an officer.  (See Mem. in Supp. of Def.'s Mot. to
Dismiss ("Mot. to Dismiss") at 3-4.)  When the involuntary
separation proceedings began, the USAR placed a suspension of
favorable personnel action, also known as a flag, on Smith's
personnel file.[2]  (See id. at 4.)  Although Smith was given
notice that she was being considered for involuntary separation
and was given the option of appearing before a separation board
(see id. at 5), she has declined to appear before the separation
board.[3]  (See 2d Am. Compl. at 23.)  Instead, Smith brought this

---

[1]  Army Regulation 135-175 provides that a USAR officer can
be involuntarily separated only after a board of officers has
approved the recommended separation.  (See Mot. to Dismiss at 2.)

[2]  A flag prevents a person who is being considered for
involuntary separation from receiving any favorable action, such
as promotion, transfer, and awards while the separation is
pending.  (See Mot. to Dismiss at 4 n.2.)

[3]  The Secretary contends that had Smith elected to appear
before the separation board, she would have had the right to "be
represented by counsel, challenge members, present evidence,
access records, question witnesses, and testify or remain
silent."  (Mot. to Dismiss at 23.)

-3-

action challenging the separation proceedings as violative of her due process rights under the Fifth Amendment, and violative of the Sixth Amendment and the APA.  (See id. at 9.)  The Secretary has moved to dismiss Smith's APA claim, arguing that it is not ripe and does not state a claim for which relief can be granted since no final agency decision has been rendered as is required before an action under the APA can be brought.  Further, the Secretary asserts that Smith's due process claims should be dismissed for failure to state a claim because Smith has not alleged a deprivation of a constitutionally-protected interest, and that Smith's Sixth Amendment claims should be dismissed because she is not being subjected to a criminal prosecution.

DISCUSSION

I.   APA CLAIM

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Shuler v. United States, 448 F. Supp. 2d 13, 17 (D.D.C. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  In reviewing the motion, a court accepts as true all of the factual allegations contained in the complaint, Artis v. Greenspan, 158 F.3d 1301, 1306 (D.C. Cir. 1998), and may also consider "undisputed facts evidenced in the record." Coal. for Underground Expansion v. Mineta, 333 F.3d

-4-

193, 198 (D.C. Cir. 2003); <u>see also</u> <u>Tootle v. Sec'y of the Navy</u>,
446 F.3d 167, 174 (D.C. Cir. 2006) (explaining that a court may
look beyond the pleadings to resolve disputed jurisdictional
facts when considering a motion to dismiss under Rule 12(b)(1)).
The "nonmoving party is entitled to all reasonable inferences
that can be drawn in her favor." <u>Artis</u>, 158 F.3d at 1306.

     The Secretary argues that the court lacks subject-matter
jurisdiction over Smith's APA claim because that claim is not
ripe for judicial review as no final agency decision has been
made concerning whether to involuntarily separate Smith from the
USAR. (<u>See</u> Mot. to Dismiss at 7-8.)  To determine whether a case
is ripe for review, a court must "evaluate both the fitness of
the issues for judicial decision and the hardship to the parties
of withholding court consideration." <u>Abbott Labs. v. Gardner</u>,
387 U.S. 136, 149 (1967).  "[T]he fitness of an issue for
judicial decision depends on whether it is purely legal, whether
consideration of the issue would benefit from a more concrete
setting, and whether the agency's action is sufficiently final."
<u>Devia v. Nuclear Regulatory Comm'n</u>, 492 F.3d 421, 424 (D.C. Cir.
2007) (internal quotation omitted).  Hardship is measured by
considering "not whether [the parties] have suffered any direct
hardship, but rather whether postponement will impose an undue
burden on the claimant or would benefit the court." <u>Nat'l Ass'n</u>

-5-

of Home Builders v. U.S. Army Corps of Eng'rs, 440 F.3d 459, 464
(D.C. Cir. 2006).

The finality requirement is to be applied in a flexible and
pragmatic manner.  See Abbott Labs., 387 U.S. at 149-50.  "The
interest in postponing review is powerful when the agency
position is tentative.  Judicial review at that stage improperly
intrudes into the agency's decision making process.  It also
squanders judicial resources since the challenging party still
enjoys an opportunity to convince the agency to change its mind."
Ciba-Geigy Corp. v. EPA, 801 F.2d 430, 435-36 (D.C. Cir. 1986)
(citations omitted).  "An agency action is final if it is 'a
consummation of the agency's decision making process,' not merely
tentative or interlocutory, and it is 'one by which rights or
obligations have been determined, or from which legal
consequences flow.'"  Isenbarger v. Farmer, 463 F. Supp. 2d 13,
20 (D.D.C. 2006) (quoting Harris v. FAA, 353 F.3d 1006, 1010
(D.C. Cir. 2004)).

Smith's APA claim is not sufficiently final to make it ripe
for judicial review.  Smith brought this claim after receiving
notification that she was being considered for involuntary
separation from the USAR.  (See Mot. to Dismiss at 5.)  However,
the separation board which will ultimately decide whether to
separate Smith from the USAR has not yet met or made a final
decision.  (See id.)  This board will review the evidence against

-6-

Smith at a hearing, where Smith will have the option of presenting her own defense and questioning any witnesses. (See id. at 23.)  No final decision on Smith's separation has yet been made, and the separation board could well decide to retain her in the USAR, negating any need for judicial review.

To review Smith's APA claim at this stage would "squander[] judicial resources," because Smith "still enjoys an opportunity to convince the [USAR] to change its mind." Ciba-Geigy Corp., 801 F.2d at 435-36.  The USAR's initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceedings.  Judicial review at this stage would inappropriately intrude upon an ongoing and incomplete agency decision-making process.  Postponement of any decision here would not serve as a hardship to Smith given that a final decision in Smith's favor at the involuntary separation proceedings may render this action unnecessary.  Because Smith's claim is not sufficiently final and because Smith has not shown that she has suffered hardship, her APA claim is not ripe for judicial review and will be dismissed.[4]

---

[4]  The Secretary also argues that Smith failed to state a claim upon which relief can be granted under the APA because she did not plead any final agency action in her amended complaint. (See Mot. to Dismiss at 11.)  For a cause of action to lie under the APA, the challenged agency action must be final.  Trudeau v. FTC, 456 F.3d 178, 188-89 (D.C. Cir. 2006).  The APA states that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."  5 U.S.C. § 704.  Smith concedes that the agency action she is challenging is not final.  (See

-7-

## II.  CONSTITUTIONAL CLAIMS

The Secretary argues that Smith's constitutional claims under the Fifth and Sixth Amendments should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[5]  In considering a motion under Rule 12(b)(6), a court must take "the factual allegations of the complaint . . . as true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader."  Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations and quotations omitted) (alteration in original).  "Factual allegations must be enough to raise a right to relief above the

_____

Opp'n at 3.)  Thus, her APA claim, in addition to not being ripe, fails to state an actionable claim.

[5]  To the extent Smith is seeking monetary damages for alleged constitutional injuries (see 2d Am. Compl. at 34), her claims must be dismissed since the doctrine established in Feres v. United States, 340 U.S. 135 (1950), and its progeny "forecloses damages actions by service members against the government for injuries occurring 'incident to service' in the military."  Brannum v. Lake, 311 F.3d 1127, 1129 (D.C. Cir. 2002).

-8-

speculative level, on the assumption that all the allegations in
the complaint are true . . . ."  Id.

A.    Fifth Amendment Claims

Smith alleges that the flag placed on her personnel file
deprived her of property and liberty interests without due
process of law in violation of the Fifth Amendment.  (See 2d Am.
Compl. at 25.)  She insists that 10 U.S.C. § 14902 "is
unconstitutional as it violates a solider's [Fifth] [A]mendment
due process rights" because the statute enables the initiation of
an involuntary separation "at any time."[6]  (2d Am. Compl. at 13.)
Further, Smith generally claims that the Army's procedures for
promulgating its regulations are unconstitutional because the

---

[6]  Section 14902  ("Separation for substandard performance
and for certain other reasons") reads as follows:

    (a) Substandard performance of duty.  The Secretary of
    the military department concerned shall prescribe, by
    regulation, procedures for the review *at any time* of
    the record of any reserve officer to determine whether
    that officer should be required, because that officer's
    performance has fallen below standards prescribed by
    the Secretary concerned, to show cause for retention in
    an active status.

    (b) Misconduct, etc.  The Secretary of the military
    department concerned shall prescribe, by regulation,
    procedures for the review *at any time* of the record of
    any reserve officer to determine whether that officer
    should be required, because of misconduct, because of
    moral or professional dereliction, or because the
    officer's retention is not clearly consistent with the
    interests of national security, to show cause for
    retention in an active status.

10 U.S.C. § 14902 (emphasis added).

-9-

"regulations can change often -- very often -- without much scrutiny."  (Pl.'s Opp'n at 4-5.)

"[D]ue process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  McManus v. Dist. of Columbia, 530 F. Supp. 2d 46, 72 (D.D.C. 2007) (citing Mathews v. Eldridge, 424 U.S. 319, 323 (1976)).  In order to determine whether a litigant's due process rights were adequately protected, courts consider:

> (1) the private interests . . . affected by the official action;
>
> (2) the risk of an erroneous deprivation of such an interest through the procedures used and the value, if any, of additional or substitute procedural safeguards; and
>
> (3) the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

See Elkins v. Dist. of Columbia, 527 F. Supp. 2d 36, 48 (D.D.C. 2007) (citing Mathews, 424 U.S. at 335).  Thus, "[f]or a plaintiff to survive a motion to dismiss under Rule 12(b)(6), [s]he must allege, at a minimum, that [s]he has been deprived of either a life, liberty, or property interest protected by the due process clause."  McManus, 530 F. Supp. 2d at 72 (internal quotations and citation omitted).

-10-

1.  Property Interest

Smith interchangeably alleges deprivations of both her
property and liberty interests.  (See 2d Am. Compl. at 2-3, 25-
26.)  Those claims that pertain to Smith's continued service in
the military and the benefits associated with her employment are
appropriately treated as property interests.  See Wilhelm v.
Caldera, 90 F. Supp. 2d 3, 8-9 (D.D.C. 2000) (citing Guerra v.
Scruggs, 942 F.2d 270 (4th Cir. 1991)).  Smith argues that flags,
like the one placed on her personnel file, unconstitutionally
"cause great harm and deprivation . . . as they affect a
soldier's ability to stay in the military via reenlistment, to
keep health care plans, and to be promoted . . . ."  (Id.)  The
Secretary asserts that this due process claim should be dismissed
because she has failed to demonstrate that she has a
constitutionally-protected property interest in continued
military service.  (See Mot. to Dismiss at 23.)

The Fifth Amendment provides that "[n]o person shall . . .
be deprived of . . . property, without due process of law."  U.S.
Const. amend. V.  While a governmental benefit may constitute a
protected property interest, see, e.g., Goldberg v. Kelly, 397
U.S. 254 (1970); Mathews, 424 U.S. 319 (1976), not every
governmental benefit enjoyed by an individual represents an
interest protected by the Constitution's Due Process Clause.
Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  To

-11-

have a constitutional interest in a governmental benefit, "a person must have more than an abstract need or desire" and "more than a unilateral expectation of it.  He must instead have a legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  "A person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . ." Perry v. Sindermann, 408 U.S. 593, 601 (1972).  These entitlements are created by sources independent of the constitution.  Castle Rock, 545 U.S. at 756.

Smith has suffered no violation of her right not to be deprived of property without due process because there is no constitutionally-protected property interest in continued military service or the employment benefits that come with military service.  See Wilhelm v. Caldera, 90 F. Supp. 2d 3, 8-9 (D.D.C. 2000) (citing Guerra v. Scruggs, 942 F.2d 270 (4th Cir. 1991)) (holding that "denials of re-enlistment as well as discharges prior to the expiration of a term of service" did not violate due process because "there is no protected property interest in continued military service"); see also Knehans v. Alexander, 566 F.2d 312, 314 (D.C. Cir. 1977) (finding that there is "no constitutionally protected entitlement to continued active duty as a commissioned officer in the Army").  Further, Smith has

-12-

not identified any statute, contract, or other independent source
of law that entitles her to the property interests she
identifies.  As such, Smith has failed to allege a
constitutionally-protected property interest in the benefits that
derive from continued military service.

     2.   Liberty Interest

    By alleging that the flag placed on her personnel file had a
stigmatizing effect and constituted "harassment, pure and simple"
(see 2d Am. Compl. at 3, 29-31), Smith also appears to allege a
constitutionally-protected liberty interest in her reputation and
good name.  See Goss v. Lopez, 419 U.S. 565, 574 (1975) ("The Due
Process Clause . . . forbids arbitrary deprivations of liberty.
'Where a person's good name, reputation, honor, or integrity is
at stake because of what the government is doing to him,' the
minimal requirements of the Clause must be satisfied." (citing
Roth, 408 U.S. at 573)).  "A due process liberty interest is
implicated where the government negatively alters the employment
status of a government employee or impugns h[er] reputation so as
to either (1) seriously damage h[er] standing and associations in
h[er] community ("reputation-plus"), or (2) foreclose h[er]
freedom to take advantage of other employment opportunities by
either (a) automatically excluding h[er] from a definite range of
employment opportunities with the government or (b) broadly
precluding h[er] from continuing h[er] chosen career ("stigma or

-13-

disability").” M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C. 2001) (citing O'Donnell v. Barry, 148 F.3d 1126, 1140-42 (D.C. Cir. 1998)). “Under either theory, a threshold question is whether an adverse employment action actually took place.” Evans v. Dist. of Columbia, 391 F. Supp. 2d 160, 167 (D.D.C. 2005).

Although placement of a flag on Smith's personnel file prevents her from receiving any *favorable* employment action such as a promotion, transfer, or awards while the elimination action is pending (see Mot. to Dismiss at 4 n.2), the flag does not constitute an adverse employment action. As explained by the D.C. Circuit, for a plaintiff to sufficiently claim a constitutionally-protected liberty interest, she must allege a “discharge from government employment or at least a demotion in rank and pay.” O'Donnell, 148 F.3d at 1140. In other words, Smith “must show that the government action has the effect of ‘seriously affect[ing], if not destroy[ing], a plaintiff's ability to pursue h[er] chosen profession,’ or ‘substantially reduc[ing] the value of h[er] human capital.” Winder v. Erste, 511 F. Supp. 2d 160, 182 (D.D.C. 2007) (citing O'Donnell, 148 F.3d at 1141 (internal quotations omitted)). Smith has not been discharged from employment or demoted, and she has failed to allege a constitutionally-protected liberty interest. See Evans, 391 F. Supp. at 168 (citing O'Donnell, 148 F.3d at 1140).

-14-

### 3.  Vagueness Claim

Smith additionally insists that the term "misconduct" in the statute pertaining to reserve officer separations, 10 U.S.C. § 14902, is unconstitutionally vague.  (<u>See</u> 2d Am. Compl. at 13, 18.)  To decide if a regulation is too vague, the court "must assess whether it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."  <u>United States v. Barnes</u>, 295 F.3d 1354, 1366 (D.C. Cir. 2002) (internal quotations and citation omitted).  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  <u>Parker v. Levy</u>, 417 U.S. 733, 756 (1974).  "[Vagueness] challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."  <u>See</u> <u>United States v. Mazurie</u>, 419 U.S. 544, 550 (1975).

Smith's conduct allegedly included, but was not limited to, failure to follow orders, threatening supervisors and superior officers at her place of duty, and lying to obtain unauthorized access to classified materials.  (<u>See</u> Am. Compl., Ex. J.)  Smith argues that because she did not engage in any of the examples of misconduct noted by the Secretary in his definition cited in the motion to dismiss[7] -- alcohol and drug abuse, criminal

---

[7]  The Secretary states that "Army Reg. 135-175 does not define the term 'misconduct.'  However, the active duty

-15-

misconduct, and civil confinement -- the prohibition against

misconduct could not have been reasonably viewed as applying to

her activity.  (See Opp'n at 6.)  The fact that her conduct did

---

counterpart regulation, Army Reg. 600-8-24, contains the same
list of conduct that qualifies for involuntary separation of
active duty officers." (Mot. to Dismiss at 3 n.1.)  Army
Regulation 600-8-24 defines misconduct as follows:

> Conduct within the control of the officer concerned, which
> includes but is not limited to drug abuse, alcohol abuse,
> criminal conduct, and civil confinement and results in
> either of the following:
>     a.   Tends to bring the officer or the Army into
>        disrepute; or
>     b.   Results in the loss or abandonment of or
>        suspension from professional status when lack of
>        status adversely affects the member's ability to
>        perform duties; or
>     c.   Includes but is not limited to drug abuse, alcohol
>        abuse, criminal conduct, and civil confinement.

Army Reg. 600-8-24, § II, Terms.
    Despite the Secretary's assertion, it is not clear that how
a reserve officer would know to look to the "counterpart
regulation" of Army Reg. 135-175 to find a definition of
misconduct.  Although Army Regulation 135-175 ("Army National
Guard and Army Reserve - Separation of Officers") does not
provide a lengthy definition of the term misconduct, it states as
follows:

> While not all-inclusive, existence of one of the
> following or similar conditions . . . authorizes
> involuntary separation of an officer due to moral or
> professional dereliction. . . . :
>     f.   Acts of personal misconduct (including, but not
>        limited to, acts committed while in a drunken or
>        drug-intoxicated state).

Army Reg. 135-175, Ch. 2-12, Moral or professional
dereliction.  "Moral or professional dereliction," in turn,
is defined as "[c]onduct within the control of the
individual concerned, which tends to bring the individual or
the Army into disrepute."  Id., Glossary § II.

-16-

not conform with the specific examples the Secretary cited,
however, carries little weight because "statutes are not
automatically invalidated as vague simply because difficulty is
found in determining whether certain marginal offenses fall
within their language." United States v. Quinn, 401 F. Supp. 2d
80, 100 (D.D.C. 2005) (citing United States v. Nat'l Dairy
Products Corp., 372 U.S. 29, 32 (1963)).  To be sure, it would be
a reach even to call Smith's alleged conduct "marginal."  See
Parker, 417 U.S. at 744 ("No question can be left open as to
. . . the duty of obedience in the soldier." (internal quotations
and citation omitted)).  While the Supreme Court has held that
generally penalizing "'some misconduct' . . . . falls short of
the kind of legal standard due process requires[,]" see Giaccio
v. Pennsylvania, 382 U.S. 399, 404 (1966), it has also insisted
that "Congress is permitted to legislate both with greater
breadth and with greater flexibility when prescribing the rules"
applying to the military.  See Parker, 417 U.S. at 756.  Thus,
regardless of how viable Smith's vagueness claim may have been in
a hypothetical civilian context, "within the military community
there is simply not the same autonomy as there is in the larger
civilian community."  Id. at 751.  Because Smith "could have no
reasonable doubt" that her alleged actions constituted

-17-

"misconduct" under 10 U.S.C. § 14902, she is precluded from bringing void-for-vagueness challenge.[8]  See id. at 757.

   B.   Sixth Amendment Claim

   Smith argues that because the separation board "gets its legitimacy from Article 36" of the Uniform Code of Military Justice, and Article 36 courts of inquiry handle criminal prosecutions, she is essentially facing a criminal prosecution which is violative of her Sixth Amendment rights.  (See Opp'n at 14.)  However, while plaintiff insists that a separation board of inquiry proceeding "looks like an Article 36 court of inquiry [and] operates like an Article 36 court of inquiry" (2d Am. Compl. at 17), the fact remains that the authority for involuntary separation proceedings comes from 10 U.S.C. §§ 14902-03, not Article 36, and such proceedings are administrative in nature.  Because a reserve officer's involuntary separation proceeding does not constitute a criminal prosecution under Article 36, the Sixth Amendment is inapplicable.

_____

   [8]  Smith insists that the Army has "lie[d] to fabricate a 'pattern of misconduct' that has little to do with [her] record." (2d Am. Compl. at 12.)  Finding that Smith's alleged conduct could reasonably be expected to be within the definition of "misconduct" is not a factual determination that such misconduct actually occurred.  See Ricks v. United States, 414 F.2d 1111, 1118 (D.C. Cir. 1968) ("[I]n determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is *charged*." (citation omitted) (emphasis added)).

-18-

Smith has stated no constitutional claims, and they will be dismissed.

<u>CONCLUSION</u>

Smith's APA claim is not ripe for judicial review, and her Fifth and Sixth Amendment claims do not state a cause of action. Thus, the Secretary's motion to dismiss will be granted.

A final, appealable Order accompanies this Memorandum Opinion.

SIGNED this 21st day of March, 2008.


                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge